**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEONDRE COLLINS,

        Petitioner,                  Case Number: 2:07-CV-11861

v.                                         HON. BERNARD A. FRIEDMAN

S.L. BURT,                           UNITED STATES DISTRICT COURT

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Deondre Collins ("Petitioner"), through his attorney, Corbett E. O'Meara, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, a state inmate who is currently incarcerated at the Newberry Correctional Facility in Newberry, Michigan, challenges his convictions under Mich. Comp. Laws § 750.520(d)(1)(A) for three counts of third degree criminal sexual conduct. Respondent has filed an Answer in Opposition to Petition for Writ of Habeas Corpus. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's convictions arise from a sexual assault that occurred in Royal Oak, Michigan. On October 11, 2002, Petitioner and Lawrence Stokes simultaneously raped fifteen-year-old C.G.[1] Tr[2]., Pt. B, p. 101-04. Specifically, Petitioner performed cunnilingus,

---

[1] The alleged victim's initials are used to protect her identity.

[2] "Tr." refers to trial transcript, which there are four volumes cited in this opinion.

and had oral and vaginal sex with C.G. Tr., Pt. B, pp. 101-03.  C.G. testified she did not consent to having sex with Petitioner or Stokes. Tr., Pt. B, p. 102.  Petitioner knew that C.G. was fifteen years old. Tr., Pt. A, p. 94.  Petitioner was twenty-three years old at the time of trial. Tr., Pt. C, p. 4.  C.G. admitted she was intoxicated when the offense occurred. Tr., Pt. A, p. 95.  On October 14, 2002, C.G. told her school counselor she was raped. Tr., Pt. B, p. 108.  The same day, C.G. reported the rape to the Royal Oak Police Department. Tr., Pt. B, p. 108. A medical exam was performed on C.G. Tr., Pt. B, p. 108.

Lindsay Mijal testified that she witnessed Petitioner perform cunnilingus on C.G. Tr., Pt. B, p. 119.  Mijal and Scott Gonte testified that C.G. told Mijal and Gonte that Petitioner and Stokes raped her. Tr., Pt. B, p. 132; Tr., Pt. C, p. 21.

On October 16, 2002, Sergeant Thomas Poff testified the Petitioner confessed to having sex with C.G. Tr., Pt. C, p. 37.  Poff and Detective Moreland met Petitioner at his home in Southfield, Michigan. Tr., Pt. C, p. 38.  One of Petitioner's family members willingly invited the officers into Petitioner's home. Tr., Pt. C, p. 38.  Poff told Petitioner about the criminal allegations against Petitioner. Tr., Pt. C, p. 38.  Petitioner admitted to Poff in Petitioner's kitchen that he had sex with C.G., but Petitioner did not believe he raped C.G. Tr., Pt. C, p.38.  Petitioner told Poff in Petitioner's kitchen that he performed cunnilingus, and orally and vaginally penetrated C.G. Tr., Pt. C, p. 39.  Poff requested that Petitioner make a video-recorded statement at the Royal Oak Police Department. Tr., Pt. C, p. 39. Petitioner consented to making the statement. Tr., Pt. C, p. 39.  Poff testified Petitioner did not have to make the video-recorded statement. Tr., Pt. C, p. 39.

Petitioner told Poff his car was broken down and Petitioner did not have a ride to the Royal Oak Police Department. Tr., Pt. C, p. 39.  Poff offered to give Petitioner a ride to the

2

police station. Tr., Pt. C, p. 40. Petitioner consented to and received a ride from Poff and Moreland. Tr., Pt. C, p. 40. Poff testified the Petitioner was not under arrest. Tr., Pt. C, p. 40. Petitioner gave a video-recorded confession at the Royal Oak Police Department. Tr., Pt. C, p. 40. Poff testified that Petitioner was not locked in the interview room and was free to leave. Tr., Pt. C, p. 40-41.

Petitioner testified at a pre-trial hearing to suppress his statement that he drank two twenty ounce beers and smoked three to four marijuana joints. Tr., # I, p. 22. Petitioner testified that his marijuana and alcohol consumption impaired his ability to understand. Tr., # I, p. 23. Petitioner stated he was "shocked, scared, and nervous" that police officers were at his home. Tr., # I, p. 24. Petitioner testified that he was nervous and scared to be at the police station based on things other people had told him. Tr., # I, p. 26. Petitioner did not testify at trial.

## II. Procedural History

On January 8, 2003, in Oakland County Circuit Court, Judge Patrick Brennan granted a *Walker* pre-trial hearing. [3] At the February 4, 2003 *Walker* pre-trial hearing, Judge Deborah Tyner suppressed the defense counsel's motion to admit evidence that Petitioner was not read his *Miranda* rights. Specifically, Judge Tyner ruled, based on the totality-of-the-circumstances, that Petitioner was not in custody at the time of his confession.

On April 1, 2003, in a jury trial in Oakland County Circuit Court, Judge Tyner declared a hung jury. On April 7, 2003, Petitioner was re-tried in a second jury trial in

---

[3] *People v. Walker,* 374 Mich. 331 (1965).

Oakland County Circuit Court and convicted of three counts of third degree criminal sexual conduct.[4] On May 28, 2003, Petitioner was sentenced ten to fifteen years for each third degree criminal sexual conduct conviction. The convictions are to be served concurrently.

Petitioner filed a motion for remand in the Michigan Court of Appeals, presenting the following claims:

> I. Defendant was denied his state and federal constitutional rights to effective assistance of counsel by his attorney's failure to investigate, present a defense at the second trial, and elicit key testimony at the second trial.
>
> II. The trial court violated Appellant's due-process rights by refusing to suppress Appellant's statement to the police where Appellant's judgment was impaired by drug and alcohol intoxication to the point that Appellant's statement was involuntary.
>
> III. Defendant's state and federal constitutional rights were violated when defense counsel failed to object to the scoring of the guidelines where OV13 was mis-scored.
>
> IV. The trial court erred in finding that as a matter of law there were substantial and compelling reasons to depart from the statutory sentencing guidelines and abused its sentencing discretion in imposing a minimum sentence of 10 years, where the guidelines range called for a sentence of 57 to 95 months.
>
> V. Defendant is entitled to re-sentencing because the sentencing guidelines range was enhanced by the scoring of offensive variables 4 and 10 on the basis of facts not proven to a jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments.

The Michigan Court of Appeals denied Petitioner's motion for remand. *See People v. Collins*, No. 249568 (Mich. Ct. App. Mar. 21, 2005). Petitioner filed an appeal as of right in the Michigan Court of Appeals, presenting the same claims in Petitioner's motion for

---

[4] Mich. Comp. Laws § 750.520(d)(1)(A).

remand. The Michigan Court of Appeals affirmed Petitioner's convictions. *See People v. Collins*, No. 249568 (Mich. Ct. App. July 19, 2005). Petitioner sought leave to appeal the Michigan Court of Appeals' order in the Michigan Supreme Court. The Michigan Supreme Court denied review of the Michigan Court of Appeals' order. *See People v. Collins*, No. 129348 (Mich. Jan. 27, 2006).[5]

Petitioner filed the pending petition for a writ of habeas corpus on April 27, 2007, presenting the following claims:

I. Introduction of the Defendant's confession violated his rights as secured by the Fifth Amendment to the United States Constitution.

II. Petitioner's sentencing pursuant to Michigan mandatory sentencing guidelines scheme violates Petitioner's rights to have those factors for which he is punished proven beyond a reasonable doubt.

### III. Standard Of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

---

[5] 474 Mich. 1019, 708 N.W.2d 383 (stating Justice Kelly would remand the case for re-sentencing).

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this Court must presume the correctness of state-court factual determinations. 28 U.S.C. § 2254(e)(1)[6]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state-court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Supreme Court defined "unreasonable application" as

---

[6] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## IV. Confession Claim

### A. Custody

Petitioner argues that he was in custody and should have been read the *Miranda* warnings. Specifically, the Petitioner argues, based on the totality-of-the-circumstances, that he was in custody at his home and when he gave his video-recorded statement at the Royal Oak Police station.

Police officers, however, are not required to administer *Miranda* warnings to every person whom they question, nor are officers required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003).

7

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Generally, questioning occurring at a Defendant's home does not present a police-coercive environment. *United States v. Hinojosa*, __ F.3d __,No. 2010 WL 2292163, * 5 (6th Cir. June 9, 2010) (citing *United States v. Panak,* 552 F.3d 462, 467 (6th Cir. 2009); *United States v. Salvo*, 133 F.3d 942, 950 (6th Cir. 1998)).

In *Orozco v. Texas*, 394 U.S. 324 (1969), the Supreme Court held, based on officer testimony, held that a defendant was in custody when police officers entered and questioned him in his bedroom during early morning hours. *Id.* at 327. The Supreme Court reasoned, based on *Miranda*, that the defendant "was deprived of his freedom of action in any significant way" and should have been read his *Miranda* warnings. *Id.*

In *Beckwith v. United States*, 425 U.S. 341 (1976), in a case similar to the factual situation in *Orozco*, the Supreme Court held that the defendant was not in custody when interviewed in his home by IRS agents. *Id.* at 348. The defendant in *Beckwith* argued that he was in custody during his home interview and subsequent interview with IRS agents. *Id.* at 346. The Supreme Court reasoned that a law-enforcement official's investigation may focus on a person's liability or guilt, but an investigation's focus is not determinative of whether or not a person is in custody.

*Id.* at 347. Specifically, whether or not *Miranda* warnings should be administered is not determined based on the subject matter of a law-enforcement interview. *Id.* Thus, the defendant was not entitled to be read the *Miranda* warnings. *Id.*

Courts may analyze whether a person is in custody in their home based on the following factors:

> (1) [T]he purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1995).

In the present case, the Michigan Court of Appeals' ruling that Petitioner was not subjected to custodial interrogation, requiring *Miranda* warnings, was not an unreasonable application of clearly established federal law. The police officers were invited into Petitioner's home and conducted their interview during afternoon hours, not early morning hours. Tr., Pt. C, p. 38. Police officers interviewed Petitioner in his kitchen, not in his bedroom. Tr., Pt. C, p. 38. Poff told Petitioner that he was not under arrest. Tr., # I, p. 7. Also, the Michigan Court of Appeals reasoned that the Petitioner was not in custody because Petitioner was interviewed in his mother's presence, Petitioner was willing to answer questions, and was free to leave at any time. *See People v. Collins*, Slip. Op. at * 4. Thus, based on the totality-of-the-circumstances, Petitioner was not in custody during his home interview. *See*

9

*Hinojosa*, No. 2010 WL 2292163, slip. op. at * 5.

In *Yarborough v. Alvarado,* 541 U.S. 652 (2004), the Supreme Court held that a California appeals court did not unreasonably apply clearly established federal law, to permit federal habeas relief, when it held that a 17-year-old suspect had not been in custody when police conducted a non-Mirandized initial interview, even though the interview lasted two hours and occurred at a police station, and the habeas petitioner was not informed that he was free to leave. In its' holding, the Supreme Court noted that the petitioner's parents rather than the police transported him to the police station, the petitioner was not required to appear at a particular time, the petitioner's parents remained in the station's lobby during the interview, the police were not coercive or threatening and twice asked the petitioner if he wanted to take break, and the petitioner went home post-interview. *Id.* at 663-64.

In the present case, Petitioner gave a non-Mirandized video-recorded statement to the Royal Oak Police. Tr., Pt. C, p. 40. The police officers offered the Petitioner a ride to the police station because Petitioner's car was broken down. Tr., Pt. C, p. 38. Petitioner consented to the officers' ride and making the video-recorded statement. Tr., Pt. C, p. 39. Petitioner was not under arrest and went to the police station voluntarily. Tr., Pt. C, p. 39. Petitioner's interview lasted twenty to twenty-five minutes. Tr., Pt. I, p. 9. The officers did not threaten, make promises, nor placed Petitioner in a locked room. Tr., Pt. I, pp. 8-10. Thus, based on *Yarborough*, the Petitioner was not in custody while making the video-recorded statement.

The relevant inquiry to determine whether or not the Petitioner was in custody

is "how a reasonable man in the [Petitioner's] position would have understood his situation." *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). There is nothing about the procedure or circumstances of the video-recorded statement that indicate that a reasonable person would not feel free that he or she was unable to leave. Petitioner was released after making the video-recorded statement. Tr., Pt. C, p. 40. Petitioner was not "deprived of his freedom of action in any significant way;" thus, Petitioner was not in custody. *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003).

In addition, the admission of Petitioner's in-home and video-recorded statements to the police were harmless errors at worst. A court may not grant habeas corpus relief if the court concludes that "the state court simply erred in determining that the errors were harmless." *Fields v. Howes*, 2009 U.S. Dist. Lexis 9202 at *17 (E.D. Mich. 2009) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003). The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the jury's verdict. *See Kyger v. Carlton*, 146 F.3d 374, 381-82 (6th Cir. 1998). In light of the victim's testimony about the sexual assault, which was corroborated in part by Lindsay Mijal, who witnessed Petitioner perform cunnilingus on the minor victim, Petitioner's non-Mirandized statements did not have a substantial or injurious influence or effect on the jury's verdict. *Id.* Thus, the Petitioner was not in custody and is not entitled to habeas relief on this portion of his first claim.

### B. Voluntariness Of Statements

Petitioner argues that he made an involuntary statement to police.

11

Specifically, Petitioner argues that his alcohol and drug consumption led to his involuntary confession.

Generally, the Fourteenth Amendment Due-Process clause prohibits involuntary confessions from being admitted at trial even if a confession independently supports a conviction. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). An involuntary confession bears of the risk of being unreliable at trial. *Arizona, v. Fulminante*, 499 U.S. 279, 286 (1991). A federal judge in a habeas proceeding can make a determination regarding the voluntariness of a confession. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The voluntariness of a confession must be analyzed based on the totality-of-the-circumstances. *Fulminante*, 499 U.S. at 286. In a voluntariness analysis, courts have used a non-exhaustive list of factors including (1) the accused's age, (2) education level, (3) intelligence, (4) whether he or she was advised of his or her Constitutional rights, (5) length of detention, (6) repeated or prolonged questioning, and (7) physical punishment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). One voluntariness factor may have heavier weight than another factor, but does not solely satisfy a voluntariness inquiry. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).

The Michigan Court of Appeals ruled, based on the totality-of-the-circumstances, that the Petitioner's statements were voluntary. *See Collins*, Slip. Op. at * 4. Specifically, the officers were invited into Petitioner's home, Petitioner willingly spoke to the officers in his mother's presence, the officers told the Petitioner he was free to go, officers shut the interview room door but never locked it, Petitioner voluntarily made the video-recorded statement and was released

thereafter. *Id.*

Petitioner argues that his statement was involuntary because he drank two twenty ounce beers and smoked three to four marijuana joints. Tr., # I, p. 22. However, both interviewing officers testified at the *Walker* hearing that the Petitioner did not appear intoxicated. *Id.* Petitioner never claimed during the *Walker* hearing nor at trial that his drug and alcohol use contributed to or caused his confession. Tr., Pt. I, p. 26-27. Thus, Petitioner's alleged intoxication alone would not determine that his statements to police were involuntary. *See Connelly*, 479 U.S. at 164.

A suspect's background experience is a fact or circumstance used by courts in its voluntariness analysis. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). However, Petitioner testified he was scared and nervous while at the police station based on what he had heard about police stations during interrogations. Tr., # I, pp. 26-27. Petitioner did not specifically testify to his own prior experiences with police or police interrogation methods. Thus, Petitioner's general testimony does not relate to the experience factor defined in *Edwards.* Thus, *Edwards* does not apply to the instant case.

Furthermore, the Petitioner made the video-recorded statement within twenty to twenty-five minutes and was free to leave after. Tr., Pt. C, pg. 40. Petitioner was closest to the interview room door. Tr., # I, pg. 25. Petitioner argues that the police officers violated Petitioner's Fifth Amendment right to remain silent by not reading *Miranda* warnings to Petitioner. Petitioner was not in custody during the home interview or video-recorded statement. *See supra,* Subsection A*.* Thus, Petitioner was not entitled to be read the *Miranda* warnings.

Based on the totality-of-the-circumstances, the Prosecution provided sufficient evidence that Petitioner's statements to police were voluntary. *See Lego v. Towmey*, 404 U.S. 477, 484 (1972). Therefore, Petitioner is denied habeas relief on his first claim.

### V. Sentencing Claim

Petitioner argues that Michigan's mandatory sentencing guidelines are materially indistinguishable from the federal sentencing scheme that was ruled unconstitutional in *Blakely* and *Booker*. Specifically, Michigan's indeterminate sentencing scheme violates the Sixth Amendment. Petitioner's claim is not cognizable and habeas relief is denied on this claim.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state-law claim. *See Howard v. White*, 76 Fed. App'x. 52, 53 (6th Cir. 2003); *See also Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). "[I]n short, petitioner has no federal

14

constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score or departing above his sentencing guidelines range along would not merit habeas relief. *Id.*

Petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using guidelines and sentencing variables that were not submitted to a jury and proven beyond a reasonable doubt. In support of his claim, Petitioner relies on *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. N.J.*, 530 U.S. 466, 490 (2000)).

The problem with Petitioner's reliance on *Blakely* is that *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730, n. 14, 684 N.W.2d 278, 286 (Mich. 2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (Mich. 2006) (both citing Mich. Comp. Laws § 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate

15

sentencing guidelines range.  *See People v. Babcock*, 469 Mich. 247, 255, n. 7, 666 N.W.2d 231, 236 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence.  *Claypool*, 470 Mich. at 730.   Therefore, Michigan's indeterminate sentencing scheme is unaffected by the U.S. Supreme Court's holding in *Blakely*.  *Drohan*, 475 Mich. at 164.

The decision in *Blakely* has no application to Petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury.  *Blakely*, 542 U.S. at 304-05, 308-09.  This was made clear in *Cunningham v. California*, 549 U.S. 270 (2007), where the Supreme Court explained that states may retain determinate sentencing by requiring the jury "to find any fact necessary to the imposition of an elevated sentence" or by allowing judges "to exercise broad discretion . . . within a statutory range, which everyone agrees, encounters no Sixth Amendment shoal."  *Id.* at 294 (quoting *United States v. Booker*, 543 U.S. 545, 565 (2002) ("[w]hether chosen by judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt" and the judge "may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those [grand and petit] juries-and without contradicting *Apprendi*."), and *Id.* at 569-70 (Breyer, J. concurring) (agreeing that "*Apprendi* does not apply to mandatory minimums.").

The holdings in *Apprendi* and *Blakely* do not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the

16

applicable statutory maximum.  *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *See also Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing).  Indeed, "[B]y clarifying that minimum sentences fall outside *Apprendi's* scope, *Harris* forecloses [petitioner's] claim." *Chontos,* 585 F. 3d at 1002.  The Sixth Amendment jury trial right merely "ensure[s] that the defendant 'will never get more punishment than he bargained for when he did the crime'"; it does "not promise that he will receive 'anything less' than that." *Id.* (*quoting Harris*, 536 U.S. at 566 (*quoting Apprendi*, 530 U.S. at 498 (Scalia, J., concurring)).

When Petitioner violated the third-degree criminal sexual conduct statute, he bargained that if a jury found him guilty, that he could face up to fifteen years in prison.  Therefore, "regardless of the ways that judicial factfinding and Michigan's guidelines affected his minimum sentence," Petitioner "got no more than he bargained for." *Chontos,* 585 F.3d 1002.  Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate Petitioner's due-process rights or his right to a jury trial. *Montes,* 599 F. 3d at 497.  Petitioner is not entitled to habeas relief on his *Blakely* claim. *Id.; See also Tironi v. Birkett*, 252 Fed. App'x. 724, 725 (6th Cir. 2007).

## VI. Conclusion

This Court denies the petition for writ of habeas corpus. Also, this Court denies a certificate of appealability to the Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## VII.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED That a certificate of appealability is DENIED.

DATED: July 12, 2010

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 12, 2010.

s/Deborah J. Goltz for Carol Mullins
Case Manager
313/234-5172